**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHRISTEN BURTON,

Plaintiff,

v. 1:25-cv-01706 (AMN/CBF)

ST. MARY'S HEALTHCARE,

Defendant.

---

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| **SIRI & GLIMSTAD LLP**<br>2300 Main Street - Suit 900 - #16946775<br>Kansas City, Missouri 64108<br>*Attorneys for Plaintiff* | **JAYSON WATKINS, ESQ.** |
| **LITTLER MENDELSON P.C.**<br>900 Third Avenue<br>New York, New York, 10022 | **WILLIAM J. ANTHONY, ESQ.** |
| 80 Linden Oaks, Suite 210<br>Rochester, New York 14625<br>*Attorneys for Defendant* | **ERIN TRAIN, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 18, 2025, plaintiff Christen Burton ("Plaintiff") commenced this action against defendant St. Mary's Healthcare ("Defendant") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* ("Section 1681"). Dkt. No. 1 ("Complaint"). Plaintiff alleges that Defendant failed to comply with certain of the FCRA's provisions prior to taking an adverse employment action against her, and also seeks to sue on behalf of a class of similarly situated individuals for statutory damages, punitive damages, costs and attorney's fees. *Id.* at ¶¶ 5-6.

Presently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction and, in the alternative, to strike Plaintiff's class allegations. *See* Dkt. No. 9 ("Motion"). Plaintiff responded, Dkt. No. 13, and Defendant replied, Dkt. No. 14. For the following reasons, the Court denies Defendant's Motion.[1]

## II. BACKGROUND

### A. The Parties

Plaintiff is an individual residing in New York. Dkt. No. 1 at ¶ 7. Defendant is engaged in the business of healthcare in New York. *Id.* at ¶ 8.

### B. Plaintiff's Factual Allegations

Plaintiff alleges that in early September 2025, she applied online for employment with Defendant at its Amsterdam, New York location. *Id.* at ¶ 19. After interviewing over the phone, Plaintiff alleges that she informed one of Defendant's Human Resources employees of her criminal history, and the employee responded by encouraging Plaintiff to continue her application. *Id.* at ¶¶ 21-22. Plaintiff alleges that Defendant offered her a job the day after she interviewed. *Id.* at ¶ 23. On September 9, 2025, Plaintiff alleges that she received, completed, and returned her onboarding forms, and received a start date of September 22, 2025.

Plaintiff alleges that on September 15, 2025, consumer reporting agency Commercial Investigations, which had already provided Defendant with Plaintiff's consumer report ("Consumer Report"), "issued a 15 U.S.C. § 1681k notice to Plaintiff [stating] that public information that may have an adverse effect on her employment was provided to Defendant." *Id.* at ¶ 29. Plaintiff alleges that the next morning on September 16, Defendant's Human Resources

[1] The Court denies Plaintiff's request for oral argument, Dkt. No. 15, as moot.

Department called and told her that "Defendant was rescinding her job offer because of unfavorable information in her Consumer Report." *Id.* at ¶ 31.

Plaintiff further alleges that later on the afternoon of September 16, 2025, Defendant sent her an email with a link to a web portal that contained a link to view her Consumer Report, a "plus sign" next to the word "documents," and other links that were non-responsive. *Id.* at ¶ 35. Plaintiff alleges that clicking on the plus sign opened "a list of previously concealed documents," including a pre-adverse action letter. *Id.* at ¶ 36. Plaintiff alleges that her Consumer Report "reveals that Defendant did not initiate the pre-adverse action process until 2:54 p.m. on September 16, 2025." *Id.* at ¶ 37. Plaintiff alleges that she "believed the adverse action communicated by Defendant during the September 16, 2025 phone call was a final decision" and that during that call Defendant did not inform her that the adverse action could be challenged. *Id.* at ¶¶ 32-33. Two weeks later, on September 30, 2025, Plaintiff alleges that she received another email link leading to the same web portal. *Id.* at ¶ 40. This time, clicking on the plus sign revealed an adverse action letter that was otherwise "concealed." *See id.* at ¶ 41.

Plaintiff also alleges that her Consumer Report itself "is misleading and includes conflicting information." *Id.* at ¶ 43. Plaintiff alleges that the report contains unfavorable information about Plaintiff from more than ten years prior, which is more than the seven to ten year "look back period" recommended by Commercial Investigations for employers. *See id.* at ¶¶ 44-47. Plaintiff further alleges that her Consumer Report "references petty crimes committed by Plaintiff that are over twenty years old." *Id.* at ¶ 48.

Plaintiff alleges that she was "unaware that the FCRA provided a right to receive a copy of the Consumer Report before the adverse action was taken by Defendant." *Id.* at ¶ 51. Plaintiff

also alleges that she was "confused as to whether the information included in the Consumer Report could be challenged." *Id.*; *see also id.* at ¶ 56.

### C. Fair Credit Reporting Act

Congress passed the Fair Credit Reporting Act to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b). Under the FCRA, when obtaining a consumer report for employment purposes, an employer must certify that they have complied with the FCRA's consumer disclosure requirements, will comply with the FCRA's adverse action provision if applicable, and not use information in a report "in violation of any applicable Federal or State equal employment opportunity law or regulation[.]" *Id.* at § 1681b(b)(1)(A). The consumer reporting agency must also provide a summary of the consumer's rights as to his or her consumer report. *Id.* at § 1681b(b)(1)(B).

The FCRA's disclosure requirements provide that an employer may not obtain a consumer report about a prospective employee unless "(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that [employer]." *Id.* at § 1681b(b)(2)(A). As to adverse actions, the FCRA requires that, "before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates-- (i) a copy of the report;

and (ii) a description in writing of the rights of the consumer under this subchapter as prescribed . . . under Section 1681g(c)(3) of this title." *Id.* at § 1681b(b)(3)(A). According to Plaintiff, the adverse action provision "provides consumers with a reasonable amount of time to review their consumer reports and address any incomplete, inaccurate, or misleading information therein, as well as to discuss any alleged errors with prospective employers before any adverse employment action is taken." Dkt. No. 1 at ¶ 18.

**D. Plaintiff's Claims**

Plaintiff's first cause of action asserts that Defendant violated the FCRA by failing to provide Plaintiff with a copy of her consumer report prior to taking adverse action against her. *Id.* at ¶¶ 61, 72, 99. Because of that failure, Plaintiff alleges that she did not have a reasonable amount of time to review, address, explain, or dispute the information contained in her report, entitling her to damages. *See id.* at ¶¶ 96-109.

Assuming that Defendant did in fact violate the FCRA's required procedures, Plaintiff's second cause of action asserts that Defendant exceeded the scope of authority granted by Plaintiff regarding access to her Consumer Report. *Id.* at ¶¶ 62-65, 115. Similarly, Plaintiff's third cause of action asserts that, prior to accessing Plaintiff's Consumer Report, Defendant falsely certified to Commercial Investigations that Defendant had complied and would comply with the FCRA's provisions. *See id.* at ¶¶ 59-60, 68-73, 120-141. Plaintiff alleges that these violations entitle her to statutory and punitive damages, as well as costs and attorneys' fees. *Id.* at ¶¶ 117-19, 139-41.

**E. Plaintiff's Proposed Classes**

Plaintiff further seeks to pursue each of these causes of action as a representative of the following proposed classes:

> ADVERSE ACTION CLASS: All individuals against whom Defendant took an adverse action based on information in their consumer report for the period of the

> previous two years prior to the date of filing, through the conclusion of this matter, and did not receive a copy of the consumer report prior to the adverse action.
>
> AUTHORIZATION CLASS: All individuals who were the subject of one or more consumer reports in which Defendant exceeded the authorization obtained from consumers for the period of the previous two years prior to the date of filing, through the conclusion of this matter.
>
> CERTIFICATION CLASS: All individuals who were the subject of one or more consumer reports in which Defendant falsely represented that Defendant would comply with 15 U.S.C. § 1681b(b)(3) for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

*Id.* at ¶ 84. Plaintiff alleges that the proposed classes satisfy the criteria set forth in Rule 23 of the Federal Rules of Civil Procedure and that allowing the class claims to proceed would be in the interest of judicial economy. *See id.* at ¶¶ 88-93.

### F. Defendant's Motion

In its Motion, Defendant seeks dismissal of Plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because Plaintiff fails to adequately allege Article III standing. Dkt. No. 9-1 at 13-18.[2] In the alternative, Defendant moves to strike the putative classes pursuant to Rules 12(b)(6) and 12(f) because they constitute "impermissible fail-safe classes." *Id.* at 18-19.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is properly granted "when the court lacks statutory or constitutional authority to adjudicate it." *Cayuga Indian Nation of New York v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 187 (N.D.N.Y. 2003) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)). To resolve such a motion, the

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997)).

Where a plaintiff lacks Article III standing, "a court has no subject matter jurisdiction to hear [her] claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Id.* Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.*

**B. Rules 12(f), 23(d), and 12(b)(6)**

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 23(d)(1)(D), a court may require that a complaint "be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Accordingly, a court may strike class allegations pursuant to Rule 12(f) before a class certification motion is filed. *Candelaria v. Conopco, Inc.*, No. 21-CV-6760, 2023 WL 2266047, at *5 (E.D.N.Y. Feb. 28, 2023) (citing *Lipsett v. United States*, 359 F.2d 956, 958 (2d Cir. 1966)).

When considering a Rule12(f) motion, a court applies the "mirror image" of the standard to dismiss a claim pursuant to Rule 12(b)(6). *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 65 (N.D.N.Y. 2008). Therefore, "[i]n determining whether to grant the motion to strike, a court will 'deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike.'" *Jujamcyn Theaters LLC v. Fed. Ins. Co.*, 659 F. Supp. 3d 372, 383 (S.D.N.Y. 2023) (quoting *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008)).

## IV. DISCUSSION

### A. Standing

In order for a federal court to have subject matter jurisdiction, a plaintiff must have standing under Article III of the Constitution—that is, they must have a "personal stake in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan*, 504 U.S. at 560-61). An injury in fact requires intrusion upon (1) a legally protected interest that is (2) concrete, (3) particularized, and (4) actual or imminent, not conjectural or hypothetical. *Id.*

When determining whether an injury arising from a statutory violation is also concrete, "the Supreme Court explained that courts may not assume that the existence of a statutory prohibition or obligation automatically elevates that prohibition or obligation to a harm that is concrete under Article III." *Foley v. IRBsearch, LLC*, No. 24 CIV. 1303, 2025 WL 950679, at *4

(S.D.N.Y. Mar. 28, 2025) (citing *TransUnion*, 594 U.S. at 424-26). "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion* 594 U.S. at 427.

Thus, "[f]or standing purposes, [ ] an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's [statutory] violation . . . , and (ii) a plaintiff's suffering concrete harm because of the defendant's [statutory] violation." *TransUnion*, 594 U.S. at 426-27. "No concrete harm, no standing." *Id.* at 417. Whether a harm qualifies as concrete hinges on a test that the Supreme Court articulated in *Spokeo v. Robins*, 578 U.S. 330, 341 (2016): whether "the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Maddox*, 19 F.4th at 63 (citing *TransUnion*, 594 U.S. at 417). And when conducting this analysis, courts need not identify "an exact duplicate." *TransUnion*, 594 U.S. at 424 (citing *Spokeo*, 578 U.S. at 341).

Defendant principally argues that Plaintiff does not have Article III standing. Dkt. No. 9-1 at 13-18. Defendant asserts that Plaintiff fails to allege that she suffered any concrete harm because Plaintiff does not allege any inaccuracies in her consumer report or that the outcome of her employment application would have been any different had she received a copy of her report prior to Defendant rescinding her offer. *Id.* at 14-15. Defendant therefore argues that Plaintiff's allegations amount to only a bare procedural violation that does not confer Article III standing. *See id*.

In response, Plaintiff argues that her Complaint does allege a concrete harm because the FCRA's pre-adverse action requirement creates a substantive right "to review and discuss the contents of a consumer report with a prospective employer" and Defendant denied Plaintiff that right through its procedural violation. *See* Dkt. No. 13 at 13-14, 16-18. Additionally, Plaintiff argues that the Complaint adequately alleges downstream consequences from Defendant's failure

to timely provide her with the required consumer report information—namely, the loss of wages and benefits, confusion, emotional distress, and anxiety. *Id.* at 15.

**1. Concrete Harm under Section 1681b(b)(3)**

As the Second Circuit has not yet addressed this precise issue, Defendant argues that the Court should follow *Gray v. Nachurs Alpine Solutions, LLC*, No. 3:21-CV-125, 2023 WL 3004433 (N.D. Ohio Apr. 19, 2023), in which the Northern District of Ohio followed the Eighth Circuit's conclusion that Section 1681b(b)(3) does not create a right for consumers to review and discuss their consumer reports with employers regardless of accuracy. Dkt. No. 9-1 at 15 & n.6 (citing *Schumacher v. SC Data Ctr., Inc.*, 33 F.4th 504, 509-12 (8th Cir. 2022)).

In *Schumacher*, the Eighth Circuit posited that when amending the FCRA in 1996 to include the pre-adverse action requirement, Congress primarily intended to combat the problem of inaccurate information in consumer reports and the difficulties consumers experienced when attempting to correct errors. *See* 33 F.4th at 511-12. With that intent in mind, the Eighth Circuit found that neither the text nor the legislative history of Section 1681b(b)(3) supported finding a right to explain or dispute the information in the consumer's report directly with an employer as opposed to with the reporting agency. *Id.* As such, the Eighth Circuit held that Congress had not provided a statutory right for a consumer "to not only receive a copy of her consumer report but also discuss directly with the employer accurate but negative information within the report prior to taking adverse action." *Id.* Notably, the court did not reach the *Spokeo* test for concrete injury because it found that a claim based on "the right to explain to a prospective employer negative but accurate information in a consumer report prior to the employer taking an adverse employment action . . . is not redressable under the plain language of the statute." *See id.* at 512. Thus, under such a reading, an employer's alleged procedural violation of Section 1681b(b)(3)(A) does not by

itself constitute a concrete harm—for a plaintiff alleging such a violation to have standing, they must also allege a separate concrete harm resulting from the violation. *See id.*[3]

Plaintiff, on the other hand, argues that the Court should follow the holdings of the Seventh Circuit in *Robertson v. Allied Solutions, LLC*, 902 F.3d 690 (7th Cir. 2018), and the Third Circuit in *Long v. Southeastern Pennsylvania Transportation Authority*, 903 F.3d 312 (3d Cir. 2018). In *Robertson*, the Seventh Circuit found that the consumer plaintiff had standing to bring a claim against an employer under Section 1681b(b)(3)(A) given her allegations that she had not received a copy of her consumer report prior to the employer taking adverse action against her based on the report. *Robertson*, 902 F.3d at 697. The court held that Section 1681b(b)(3)(A) provides consumers with the right to discuss even accurate information with an employer, finding that the provision's text includes "no reference to potential inaccuracies or any other specific reason for the disclosure" that is required when an employer takes adverse action against a job applicant based on a consumer report. *Id.* at 695-96. The court noted that, by contrast, the text of Section 1681b(b)(3)(B), which creates an exception to Section 1681b(b)(3)(A) for employers taking adverse action as to jobs regulated by the Secretary of Transportation, specifically requires such employers to notify adverse action recipients that they may "request a free copy of the [consumer]

[3] Defendant also argues that the Ninth Circuit's decision in *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (9th Cir. 2018), is in accord with the Eighth Circuit's decision in *Schumacher*. Dkt. No. 9-1 at 8, 15. While the *Dutta* court ultimately affirmed the district court's holding that the plaintiff lacked standing because he could not demonstrate concrete harm, it did so based on the particular factual record in that case. *Dutta*, 895 F.3d at 1176. Subsequently, at least one lower court has noted that the decision in *Dutta* "does not mean . . . that all accurate credit reports fail to establish an injury[]" before adopting the reasoning of the Seventh Circuit as to injuries arising from violations of Section 1681b(b)(3). *Magallon v. Robert Half Int'l, Inc.*, No. 6:13-CV-1478, 2024 WL 4182846, at *7-8, *8 n. 6 (D. Or. Sept. 13, 2024); *see also Wilson v. First Advantage Background Servs. Corp.*, No. 21-CV-06071, 2023 WL 9894476, at *2 (W.D. Mo. Oct. 13, 2023) ("The Ninth Circuit affirmed [the *Dutta* district court] because the undisputed facts showed that plaintiff was denied employment for reasons unrelated to the Consumer Report.").

report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report." 15 U.S.C. § 1681b(b)(3)(B)(i)(IV). Of the two subparts, only Section 1681b(b)(3)(A) *compels* disclosure of the report *prior* to adverse action. Thus, the court concluded that, when read together with Section 1681b(b)(3)(B), "which explicitly limits the range of disputes to 'accuracy or completeness,'" Section 1681b(b)(3)(A)'s broader "pre-adverse action requirement assures that the applicant will have a chance to review the actual document on which the employer relied, and that she can do so with time to respond to unfavorable information." *Robertson*, 902 F.3d at 696.

The Seventh Circuit thus held that "an employer's disclosure obligations under [Section 1681b(b)(3)(A)] exist to serve interests beyond the problem of inaccurate reports"—that is, the interests at issue in the instant case: allowing the consumer "to review the reason for any adverse decision and to respond." *Id.* at 696. Noting that the consumer plaintiff's interest in accuracy vis-à-vis her relationship with an employer is not the same as that of her relationship with the reporting agency, the court explained:

> Providing context may be more valuable than contesting accuracy. Some consumers may collect supporting documents quickly enough to corroborate an accuracy challenge before the employer makes its decision. Yet in a swearing contest, the employer might not be likely to side with the consumer (applicant) over the agency. But information that seems damning at first glance might not be so bad in context. A person with a spotted record might convince an employer to revisit its decision if she can explain what happened.

*Id.* at 697. And thus the court found that statute protects the consumer's right to provide context "independent of any underlying factual disputes." *Id.* at 696.[4]

---

[4] The Seventh Circuit did not apply *Spokeo*'s "close relationship" test. *See id.* at 697. The *Robertson* court found that *Spokeo* did not require a different result because the Supreme Court in *Spokeo* ultimately remanded the case and only hypothesized that "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate," and in that case "*may* result in no harm." *Id.*

In *Long*, the Third Circuit agreed with the Seventh Circuit as to the right created by the text of Section 1681b(b)(3)(A), and, under the test articulated in *Spokeo*, further found that a violation of that right bears a close relationship to a traditional common law harm: "when one sues under a statute alleging 'the very injury the statute is intended to prevent,' and the injury 'has a close relationship to a harm traditionally providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Long*, 903 F.3d at 320 (quoting *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017)). First, applied to plaintiffs who allege violations of Section 1681b(b)(3)(A), the court found that Congress intended to make such violations redressable because the text and context of the statute grants the consumer "a right to receive a copy of his report before adverse action is taken, and provided for statutory damages plus attorney's fees for willful noncompliance[.]" *Id.* at 323 (citing, *inter alia*, 15 U.S.C. §§ 1681b(b)(3), 1681n). Second, as to the *Spokeo* test requiring a "close relationship" to a traditional harm, the court held that the statute protected privacy rights sufficiently analogous to those protected by traditional common law privacy rights. *Id.* at 324.

Historically, common law privacy rights could be invaded by "(a) unreasonable intrusion upon the seclusion of another, . . . (b) appropriation of the other's name or likeness, . . . (c) unreasonable publicity given to the other's private life, . . . or (d) publicity that unreasonably places

---

(quoting *Spokeo*, 578 U.S. at 342) (internal quotation marks omitted) (emphasis added). While the Court agrees with the Seventh Circuit's conclusion as to the right created by the text of Section 1681b(b)(3), it notes that after *TransUnion*, whether a violation of that right constitutes concrete harm also requires a close relationship to a common law or traditional harm. *See TransUnion*, 594 U.S. at 424 ("[W]ith respect to the concrete-harm requirement in particular, this Court's opinion in *Spokeo* v. *Robins* indicated that courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."). But as noted below, the Third Circuit picks up where Seventh Circuit left off by applying the "close relationship" test to the right created by the text of the statute. *See Long*, 903 F.3d at 324.

the other in a false light before the public." Restatement (Second) of Torts § 652A(2)(a)-(d) (1977). "The latter three types of privacy torts represent interference with an individual's ability to control his personal information." *Long*, 903 F.3d at 324. The court found that such interference is analogous to when an employer uses a plaintiff's personal information—that is, her consumer report—without the plaintiff being able to see or respond to it. *See id.* Thus, when an employer violates Section 1681b(b)(3)(A), "even in the context of accurately reported negative information," an "injury arises from the loss of an opportunity to explain that negative information." *Azeez v. Lifespan Corp.*, 635 F. Supp. 3d 75, 83 (D.R.I. 2022) (citing *Long*, 903 F.3d at 319 and *Robertson*, 902 F.3d at 697). Indeed, the court found that "it would not make sense for [Section] 1681b(b)(3) to apply only to inaccurate information, because the consumer cannot know whether his report is accurate unless it is disclosed to him." *Long*, 903 F.3d at 319.

The Court finds the reasoning of the Seventh and Third Circuits persuasive as to the right created by the text of Section 1681b(b)(3)(A). The overall structure of the FCRA strongly suggests that Congress intended to grant plaintiffs a cause of action to sue when an employer violates its provisions, as the FCRA provides for liability in the event of both willful and negligent noncompliance. *See* 15 U.S.C. §§ 1681n, 1681o. And the text of Section 1681b(b)(3)(A), which conditions the use of consumer reports as the basis for adverse employment actions on the disclosure of those reports, nowhere contains any qualifiers on a consumer's right to receive their report prior to an employer taking adverse action. Rather, the phrase "before taking any adverse action" appears to address the FCRA's broad concern for "fair and accurate credit reporting," which goes beyond an interest in mere accuracy and reflects the values of "fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(1), (4). Thus, in practice, "[t]he required pre-adverse-action copy of an individual's consumer report allows him to ensure

that the report is true, *and may also* enable him to advocate for it to be used fairly—such as by explaining why true but negative information is irrelevant to his fitness for the job." *Long*, 903 F.3d at 320. And that statutory right only makes sense if an individual could advocate as such *with the employer*. Therefore, the Court follows the Seventh and Third Circuits in holding that the text of Section 1681b(b)(3)(A) provides a plaintiff the right to receive her consumer report and review and discuss its contents with a potential employer prior to that employer taking adverse action against her, regardless of the accuracy of the report.

As to the Third Circuit's holding that the violation of that right constitutes concrete harm, the Court finds that *TransUnion* does not require a contrary result. In *TransUnion*, the Supreme Court held that certain members of a class did not have standing to sue a credit reporting agency under a different provision of the FCRA, 15 U.S.C. § 1681e(b). 594 U.S. at 433-39. Some members of the class did have standing because they alleged that their misleading consumer reports were disseminated to third parties, a harm with a "close relationship" to the traditional harm of defamation. *Id.* at 431-33. However, others in the class with similarly misleading information in their consumer reports did not have standing because they did not allege that the information had been disseminated, and absent some allegation of harm arising from those misleading reports sufficiently analogous to a traditional harm in American courts, they did not suffer a concrete harm despite the procedural violation. *Id.* at 433-34.

The *TransUnion* court reaffirmed the test for concrete harm first articulated in *Spokeo*: a plaintiff alleges concrete harm arising out of a statutory violation when the alleged injury "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (citing *Spokeo*, 578 U.S. at 341). And even though it decided *Long* prior to *TransUnion*, the Third Circuit applied this exact test. *See Long*,

903 F. 3d at 324; *see also Messina v. S&A Sols., Inc.*, No. 22-CV-10706, 2023 WL 6397749, at *4-5 (E.D. Mich. Sept. 30, 2023) (agreeing with the Third Circuit that Section 1681b(b)(3)(A) protects "essentially the same interests" as common law privacy torts and finding that plaintiff pled concrete harm when alleging that defendant relied on plaintiff's consumer report "as a basis for his termination without affording him an opportunity to review or respond"). The Court thus agrees that Section 1681b(b)(3)(A) grants a plaintiff the right to receive her consumer report and review and discuss its contents with a potential employer prior to that employer taking adverse action against her, regardless of the accuracy of the report, and that a plaintiff who alleges a violation of that right has alleged an injury sufficiently analogous to common law privacy harms for the purpose of Article III standing. *See also Azeez*, 625 F. Supp. 3d at 85-86 ("This Court agrees with the majority of courts that have found that [Section] 1681b(b)(3)(A) provides an employee the right to receive a copy of their consumer report and discuss its contents with their employer before an adverse action is taken against them based on that report regardless of whether the information in the report is accurate.") (collecting cases).[5]

**2. Plaintiff's Allegations as to Concrete Harm**

Accordingly, Plaintiff here has standing to bring her claims because she alleges that Defendant rescinded her job offer over the phone prior to providing Plaintiff with her consumer

---

[5] In a recent case within this Circuit, *Kirk v. American Cruise Lines, Inc.*, the court, in the context of considering a motion to certify a class, disagreed with the Third and Seventh Circuits on the question of concrete harm arising from violations of Section 1681b(b)(3)(A), reasoning that neither *Robertson* nor *Long* adequately addressed whether the claimed injury had a "close relationship" with a common law or traditional analogue as required by *TransUnion*. No. 3:23-CV-1057, 2025 WL 2017057, at *6 (D. Conn. July 18, 2025). While it is true that the *Robertson* court only considered the text and purpose of the statute and did not apply the "close relationship" test, *see Robertson*, 902 F.3d at 695-98, the *Long* court, as noted above, explicitly considered the analogy between the right created by Section 1681b(b)(3) and common-law privacy torts, *Long*, 903 F.3d at 324.

report and notice of her rights under the statute. *See* Dkt. No. 1 at ¶¶ 31-36. Therefore, Plaintiff was deprived of the opportunity to review and discuss the information contained in her report with Defendant prior to Defendant taking adverse employment action against her.[6]

To the extent that Defendant argues that it only took adverse action against Plaintiff two weeks after that phone call, when it sent her an official adverse action letter, the Court finds that argument unavailing. *See* Dkt. No. 9-1 at 10; Dkt. No. 14 at 11. Plaintiff alleges that during the phone call, a representative of Defendant told her that Defendant was rescinding her job offer such that she believed that it was a final decision. Dkt. No. 1 at ¶¶ 31, 33. Plaintiff further alleges that Defendant only sent an email with a link to a pre-adverse action letter, her consumer report, and her rights under the FCRA *after* Plaintiff was told of the rescinded offer and she believed the decision to be final. *Id.* at ¶¶ 33-38. As a result, Plaintiff alleges that she was "unaware the FCRA provided a right to receive a copy of the Consumer Report before the adverse action was taken by Defendant" and "was also confused as to whether the information included in the Consumer Report could be challenged." *Id.* at ¶ 51. Thus, Plaintiff alleges that Defendant not only violated the procedure required by Section 1681b(b)(3)(A) but in doing so also failed to provide Plaintiff with the opportunity to review and discuss the information in the consumer report with Defendant, thereby inflicting a concrete harm.[7]

---

[6] Because the Court finds that the loss of the right to explain the information in the consumer report is itself a concrete injury sufficient for Article III standing because it is analogous to a common law privacy right, it need not address whether Plaintiff has also adequately alleged a separate concrete informational injury. *See* Dkt. No. 13 at 15-16; Dkt. No. 14 at 8-9.

[7] Plaintiff also asserts that her alleged concrete injury is substantially supported by Article 23-A of the New York Correction Law ("Article 23-A"), which provides factors that an employer must consider before taking an adverse action on an individual's application for employment based on her prior criminal conviction(s). Dkt. No. 1 at ¶¶ 49-53; Dkt. No. 13 at 15-16, 18; N.Y. Corr. Law §§ 752-53. In support, Plaintiff cites *Franklin v. Whole Foods Mkt. Grp., Inc.*, No. 20-CV-4935, 2022 WL 256460, *8 (S.D.N.Y. Jan. 26, 2022), but that case is distinguishable because the plaintiff there alleged a procedural violation of city and state discrimination laws and the laws at issue

The Court accordingly finds that Plaintiff has standing to bring her claim against Defendant under Section 1681b(b)(3)(A) and denies Defendant's Motion to dismiss for lack of subject matter jurisdiction.

**B. Class Allegations**

Because Plaintiff has standing to bring her claim as to Section 1681, she also has standing to represent a putative class as to that claim. *See Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 183 (E.D.N.Y. 2009) ("Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made.").

Defendant, in the alternative, moves to strike the Plaintiff's class allegations pursuant to Rules 12(b)(6), 12(f), and 23(d)(1)(D) because they constitute "impermissible fail-safe classes". Dkt. No. 9-1 at 18-19. Defendant specifically argues that each of Plaintiff's proposed classes fails to meet the Second Circuit's implied requirement of ascertainability as to Rule 23 of the Federal Rules of Civil Procedure. *Id.* A court determining ascertainability looks to "whether the class is 'sufficiently definite that it is administratively feasible for the court to determine whether a

incorporate the requirements of Article 23-A in their text. *Id.* at *2 n. 2. The court also found that the plaintiff had sufficiently pled standing as to the New York Fair Credit Reporting Act ("NY FCRA") for failing to provide a copy of his Article 23-A rights prior to taking adverse action because plaintiff adequately pled the *separate* concrete harm of discrimination. *Id.* at *9 n. 17 ("Because the concrete interest at issue is Franklin's interest in being free from discrimination, whether Franklin has standing over his procedural claims rises and falls with his underlying discrimination claim."). *Franklin* does not address whether Article 23-A provides any substantial rights or requirements under the federal FCRA. *See generally id.* Moreover, it appears that the NY FCRA does not include a pre-adverse action requirement parallel to that of the federal FCRA at all. *See* N.Y. GEN. BUS. Law § 380 *et seq.*; *cf. Aghaeepour v. N. Leasing Sys., Inc.*, 378 F. Supp. 3d 254, 259-63 (S.D.N.Y. 2019) (finding that the NY FCRA imposes a "pre-pull" notice requirement on employers prior to requesting reports while the federal FCRA imposes a "post-pull" notice requirement on employers prior to taking adverse action, and that they are separate requirements). Plaintiff provides no authority that applies Article 23-A to a claim under the FCRA and, having already found that Plaintiff alleges a concrete injury, the Court declines to address the issue.

particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting 7A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1760 (3d ed. 1998)).

In the Second Circuit, motions to strike class allegations at the pleading stage are "disfavored" because they seek to "preemptively terminate" such claims "solely on the basis of what is alleged in the complaint" rather than on the discovery to which plaintiffs would otherwise be entitled on the question of class certification. *Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 166 (S.D.N.Y. 2019). Therefore, a successful motion to strike must either raise issues "separate and apart" from those that would be decided on a motion for class certification or show on the face of the complaint that certification would be impossible "regardless of the facts the plaintiff may be able to obtain during discovery." *Candelaria*, 2023 WL 2266047, at *5 (citations and internal quotation marks omitted).

Neither situation is present here. Defendant's argument as to ascertainability would typically be decided on a motion for class certification. And Defendant does not otherwise argue, outside of the issue of Plaintiff's Article III standing, that certification would be impossible regardless of the facts that may be obtained during discovery. *See* Dkt. No. 14 at 13-14. The Court therefore declines to strike the class allegations at this stage and denies Defendant's Motion as to the class allegations.

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant's Motion to dismiss, Dkt. No. 9, be **DENIED** in its entirety; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 22, 2026
Albany, New York

Anne M. Nardacci
U.S. District Judge